UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
AUG 23 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

_____

WILDERNESS USA, INC.,

              Plaintiff,

    v.

DEANGELO BROTHERS LLC,

              Defendant.

_____

**DECISION AND ORDER**

6:17-CV-06491-EAW

## **INTRODUCTION**

Plaintiff Wilderness USA, Inc. ("Plaintiff") commenced this action in New York State Supreme Court, Monroe County, seeking various forms of relief arising out of a contractual dispute with defendant DeAngelo Brothers LLC ("Defendant"). (Dkt. 1-1). On July 25, 2017, Defendant filed a notice of removal to this Court based on diversity jurisdiction. (Dkt. 1; *see* Dkt. 2 (continuation of exhibits)).

Presently pending before the Court is Defendant's motion to dismiss for lack of *in personam* jurisdiction and improper venue. (Dkt. 9). The central question governing the disposition of this motion is whether the Court has general jurisdiction over a party, such as Defendant, who is registered to do business as a foreign corporation in New York State, and, as such, has appointed the New York State Secretary of State as its agent for service process. *See* N.Y. Bus. Corp. Law §§ 1301, 1304(a)(6). Defendant rightly acknowledges that New York courts have permitted the exercise of general jurisdiction over a foreign corporation upon no other basis but compliance with the registration statute. *See Steuben Foods, Inc. v. Oystar Grp.*, No. 10-CV-780S, 2013 WL 2105894, at

- 1 -

*3 (W.D.N.Y. May 14, 2013). However, Defendant also contends that this method of acquiring personal jurisdiction is outmoded and has been rendered inapplicable in light of the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), as well as the subsequent cases decided within this Circuit. (Dkt. 9-2 at 15-17). Plaintiff recognizes that several federal district court cases have construed *Daimler* as Defendant suggests, (Dkt. 13 at 16), but Plaintiff argues that these cases were wrongly decided and that the exercise of general jurisdiction pursuant to New York's business registration statute is still supported by good law. Because the Court agrees with Defendant that *Daimler* altered the landscape for acquiring personal jurisdiction in a case such as this, Defendant's motion to dismiss (Dkt. 9) is granted, and Plaintiff's complaint is dismissed without prejudice.

## FACTUAL BACKGROUND[1]

Plaintiff, a New York corporation maintaining its principal place of business within this district in Monroe County, New York (Dkt. 1-1 at ¶ 1), operates a business specializing in "vegetation management" (*id.* at 7). Plaintiff employs various individuals to assist in controlling overgrowth along highways and right-of-ways. (*Id.* at ¶ 8). According to Defendant's notice of removal, Defendant is a Pennsylvania limited liability company and maintains its principal place of business in Pennsylvania.[2] (Dkt. 1 at ¶ 11; *see* Dkt. 9-3 at ¶ 3).

---

[1]    The following facts are taken from the complaint unless otherwise specified.

[2]    The matter was properly removed to federal court on the basis of diversity jurisdiction because Defendant has alleged an amount in controversy that exceeds

On February 15, 2016, Plaintiff entered into a subcontract with a nonparty contractor known as Mercier, Inc. ("Mercier") (Dkt. 1-1 at ¶ 9). Mercier agreed to bid on projects offered by the Georgia Department of Transportation ("GDOT"), and promised to assign Plaintiff as its sole subcontractor for vegetation management on any contracts it was awarded by the State of Georgia. (*Id.* at ¶ 12). Mercier obtained three contracts for vegetation management within three different GDOT districts (collectively, "GDOT Contract"). (*Id.* at ¶ 13). However, after learning that the owner of Mercier wished to sell the company to Defendant, Plaintiff engaged in negotiations with Mercier and Defendant to protect its rights under the subcontract. (*Id.* at ¶¶ 14, 17).

On November 29, 2016, Plaintiff, Defendant, and Mercier entered into an "Assignment and Assumption and Release" agreement (the "Agreement"), which provided that Defendant would assume Mercier's responsibilities under the subcontract with Plaintiff. (*Id.* at ¶ 21). The Agreement also prevented Defendant from interfering with Plaintiff's work under the GDOT Contract. (*Id.* at ¶ 22). Plaintiff alleges that it has been competently performing its obligations under the GDOT Contract for over a year and a half. (*Id.* at ¶ 35).

---

$75,000, (Dkt. 1 at ¶ 20); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006), Plaintiff is a citizen of New York for purposes of diversity, (Dkt. 1 at ¶ 10; *see* Dkt. 1-1 at ¶ 1); *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002); *see* 28 U.S.C. § 1332(c)(1), and none of Defendant's members are individual residents of New York, or corporate entities that are incorporated under New York law or maintain a principal place of business in New York State. (Dkt. 1 at 3); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("In general, the citizenship of a limited liability company is determined by the citizenship of each of its members.").

In June and July of 2017, Defendant allegedly sent its employees to antagonize GDOT personnel about Plaintiff's job performance under the GDOT Contract. (*Id.* at ¶ 42). Plaintiff notified Defendant that it was interfering with Plaintiff's obligations under the GDOT Contract, and Defendant responded by terminating the subcontract for several material breaches of the subcontract and the GDOT Contract. (*Id.* at ¶¶ 44-45). Plaintiff alleges that Defendant manufactured these various contractual breaches to "squeeze [Plaintiff] out of the GDOT Contract so that it can take over the work itself." (*Id.* at ¶ 48). Plaintiff further alleges that it will suffer irreparable harm upon the termination of the subcontract, such as being forced to lay off 50 employees in Georgia, the loss of its goodwill and reputation with GDOT, and the loss of "substantial investments in acquiring materials and equipment" for the performance of the GDOT Contract. (*See id.* at ¶¶ 50-51, 53).

Plaintiff filed this action in New York State Supreme Court, Monroe County, seeking a declaration that it has not materially breached the subcontract or the GDOT Contract, a declaration that Defendant's purported termination of the subcontract is void, injunctive relief enjoining Defendant from seeking to terminate the subcontract or otherwise interfere with Plaintiff's performance of the GDOT Contract, and, alternatively, monetary damages for Defendant's alleged breach of the subcontract and the Agreement. (*Id.* at 10-12). On July 20, 2017, the state court entered a temporary restraining order preventing Defendant from terminating the subcontract or otherwise interfering with Plaintiff's performance of the GDOT Contract. (Dkt. 1-8).

Defendant has since filed a notice of removal (Dkt. 1), and a motion to dismiss/transfer of venue (Dkt. 9). Defendant claims that this Court does not have the authority to exercise either general or specific jurisdiction over Defendant, and thus, the action must be dismissed for lack of personal jurisdiction. (Dkt. 9-2 at 13-24). Plaintiff responds only to Defendant's argument regarding general jurisdiction, and contends that personal jurisdiction has been established because Defendant has registered to do business in New York State as a foreign corporation and has appointed the New York State Secretary of State as its agent for service of process in the state. (Dkt. 13 at 6-17).

Defendant also contends that the complaint should be dismissed because the Western District of New York is an improper venue for this action and, alternatively, even if this Court chooses not to dismiss this action, the matter should be transferred to the State of Georgia as a matter of convenience. (Dkt. 9-2 at 24-29). Plaintiff opposes Defendant's venue arguments, claiming that the Western District of New York is the proper venue for this action, and that this Court should not exercise its discretion to transfer the case. (Dkt. 13 at 17-21).

## DISCUSSION

### I.     Personal Jurisdiction

#### A.     Legal Standard

"The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "On a Fed. R. Civ. P.

12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Lit.*, 334 F.3d 204, 206 (2d Cir. 2003). "Prior to discovery, a plaintiff may survive a Rule 12(b)(2) motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction." *DiFillippo v. Special Metals Corp.*, 299 F.R.D. 348, 352 (N.D.N.Y. 2014) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). "That is, where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a prima facie showing of personal jurisdiction over a defendant." *Id.* (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986)).

"In general, a 'district court's personal jurisdiction is determined by the law of the state in which the court is located.'" *Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 219 (W.D.N.Y. 2012) (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to N.Y. CPLR § 301 . . . or specific jurisdiction pursuant to N.Y. [CPLR] § 302." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quotations omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and

whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).[3]

## B.    General Jurisdiction

The Supreme Court has held that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quotation omitted); *see Brown*, 814 F.3d at 627 ("*Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases.").

---

[3]    It is clear that the Court does not have specific jurisdiction over Defendant. The complaint alleges that the asserted causes of action arise from conduct occurring in Georgia, not New York. (Dkt. 1-1 at 9-12). Indeed, Plaintiff does not even respond to Defendant's argument that specific jurisdiction does not exist in this matter. (Dkt. 13). As Plaintiff fails to allege that its causes of action arise out of any conduct by Defendant in New York State, the Court cannot exercise specific jurisdiction over Defendant pursuant to CPLR 302(a)(1). *See, e.g.*, *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 389-90 (E.D.N.Y. 2015); *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 359 (S.D.N.Y. 2014).

### 1. Prevailing Principles Pre-*International Shoe*

Plaintiff contends that Defendant is subject to the reach of this Court's general jurisdiction by the sole fact that Defendant has registered to do business within the State of New York pursuant to N.Y. Bus. Corp. Law § 1301. This registration statute requires that foreign corporations receive explicit authorization to do business in New York before they may lawfully transact business in New York State. *Id.* § 1301(a). To receive this authorization, a foreign corporation must submit an application that includes, among other things, "[a] designation of the secretary of state [of New York] as its agent upon whom process against it may be served. . . ." *Id.* § 1304(a)(6).

Before *International Shoe* and its progeny ushered in the modern era of personal jurisdiction jurisprudence, the principles of this legal doctrine were governed primarily by the physical geographic limits of a state. *See Pennoyer v. Neff*, 95 U.S. 714, 722 (1877) ("[N]o State can exercise direct jurisdiction and authority over persons or property without its territory."). The necessity for physical presence within the state gave rise to the business registration statutes, which "were enacted primarily to allow states to exercise jurisdiction over corporations that, although not formed under its laws, were transacting business within a state's borders and thus potentially giving rise to state citizens' claims against them." *Brown*, 814 F.3d at 632 (citing cases). During this period, the New York Court of Appeals held that the courts of New York "may exact from a foreign corporation as a condition of doing business a consent to accept service of process in specified manner or upon a specified public officer in a specified place and with specified effect," and that "a designation of a public officer upon whom service may

be made has the same effect as a voluntary consent." *Pohlers v. Exeter Mfg. Co.*, 293 N.Y. 274, 280 (1944). New York's highest court relied upon the Supreme Court's decision in *Pennsylvania Fire Ins. Co. of Phila. v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93 (1917), which affirmed the assertion of personal jurisdiction over a defendant who designated the State of Missouri's insurance superintendent as its agent for service of process for all liabilities held within the state. *Id.* at 94-96. The *Pohlers* court, as does Plaintiff, also cited to *Bagdon v. Phila. & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916), which held that service upon the defendant's appointed agent—in that case, New York State's Secretary of State—was sufficient to grant state court jurisdiction over "any action which under the laws of [New York] may be brought against a foreign corporation." *Id.* at 437; *see Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 175 (1939) (citing to *Pennsylvania Fire* and holding that New York's interpretation of its registration statute in *Bagdon* was constitutional).

## 2.    The Legal Landscape Post-*International Shoe*

*International Shoe* broadened the authority of state courts to exercise *in personam* jurisdiction over foreign defendants by extending the analysis beyond physical presence and refocusing it upon whether a defendant maintained "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotations omitted); *see Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) ("The immediate effect of this departure from *Pennoyer*'s conceptual apparatus was to increase the ability of the state courts to obtain personal jurisdiction over nonresident defendants."); *see also Daimler*, 134 S. Ct.

at 758 ("As this Court has increasingly trained on the relationship among the defendant, the forum, and the litigation, i.e., specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme." (internal quotations, citations, and footnotes omitted)).

It is not hyperbolic to suggest that the prevailing case law relating to personal jurisdiction today has undergone drastic and doctrinal changes over the past century. As the Second Circuit articulated in *Brown*:

> *Pennsylvania Fire* is now simply too much at odds with the approach to general jurisdiction adopted in *Daimler* . . . ; in our view, the Supreme Court's analysis in recent decades, and in particular in *Daimler* and *Goodyear*, forecloses such an easy use of *Pennsylvania Fire* to establish general jurisdiction over a corporation based solely on the corporation's registration to do business and appointment of an agent under a state statute *lacking explicit reference to any jurisdictional implications*.

814 F.3d at 638-39 (emphasis added).[4] Plaintiff has also heavily relied upon the Supreme Court's decision in *Neirbo*, which has received similar criticism. As mentioned above,

---

[4] Notably, Pennsylvania appears to be the sole jurisdiction that has enacted an express statutory provision admonishing foreign corporations that registration of the secretary of state as an agent for service process carries with it consent to personal jurisdiction by the courts of that state. *See* Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 CARDOZO L. REV. 1343, 1414 n.2 (2015); *see also* 42 Pa. Cons. Stat. § 5301(a)(2)(i)-(ii) ("The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person[:] . . . Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth . . . Consent, to the extent authorized by the consent. . . ."). Moreover, it further appears that the New York State legislature attempted to pass a bill containing similar language, but that bill failed to become enacted into law. Monestier, 36 CARDOZO L. REV. at 1414 n.2; *see* S. 7078, 200th S., Reg. Sess. (N.Y. 2014). There is proposed legislation in New York that would

*Neirbo* upheld the constitutionality of New York's interpretation of the then-existing version of its General Corporation Law, which held that the designation of the state Secretary of State for service of process amounted to consent to personal jurisdiction over the foreign corporation. *Neirbo*, 308 U.S. at 175. A close reading of *Neirbo* reveals that it suffers from the same outmoded jurisdictional principles as *Pennsylvania Fire*. *Neirbo* recognized that earlier decisions had held that a corporation could not be sued in a foreign jurisdiction because a "corporation 'must dwell in the place of its creation, and cannot migrate to another sovereignty.'" *Id.* at 169 (quoting *Bank of Augusta v. Earle*, 38 U.S. 519, 588 (1839)). *Neirbo* explained:

> The fact that corporations did do business outside their originating bounds made intolerable their immunity from suit in the states of their activities. And so they were required by legislatures to designate agents for service of process in return for the privilege of doing local business. That service upon such an agent, in conformity with a valid state statute, constituted consent to be sued in the federal court and thereby supplanted the immunity as to venue. . . .

*Neirbo*, 308 U.S. at 170. Therefore, because a corporation could not be physically "found" within the geographical limits of foreign jurisdictions, the consent-by-registration theory of general jurisdiction was a means to remedy the problems incumbent upon seeking redress against foreign corporations. *See Ex parte Schollenberger*, 96 U.S. 369, 377 (1877) ("[I]f the legislature of a State requires a foreign corporation to consent to be 'found' within its territory, for the purpose of the service of process in a suit, as a condition to doing business in the State, and the corporation does so consent, the fact that

---

expressly enact a like jurisdictional provision into law. *See*. S. 5889, 239th S. Reg. Sess. (N.Y. 2017); A. 5918, 239th Reg. Sess. (N.Y. 2017).

it is found gives the jurisdiction, notwithstanding the finding was procured by consent. The essential fact is the finding, beyond which the court will not ordinarily look.").

*International Shoe* "cast doubt on the continued viability of [*Pennsylvania Fire* and *Neirbo*]." *Cognitronics Imaging Sys, Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 692 (E.D. Va. 2000); *see also Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 WL 2470844, at *5 (S.D.N.Y. June 7, 2017) (noting that *Neirbo* "precede[s] *Daimler*, and therefore do[es] not address whether the consent-by-registration theory remains a valid basis for general personal jurisdiction."); *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 177 & n.3 (D.N.J. 2016) (adopting the reasoning in *Brown* and stating that "the sweeping propositions of jurisdictional power in *Pennsylvania Fire* and *Neirbo* cannot be squared with the Supreme Court's current statements on jurisdiction in *Daimler*"). "Instead of looking to the territory in which the defendant could be found, the focus changed to whether the 'nonresident corporate defendant [ ] has 'certain minimum contacts with the forum. . . .'" *Display Works, LLC*, 182 F. Supp. 3d at 177-78 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 427 (1984)); *see generally Shaffer*, 433 U.S. at 212 ("We therefore conclude that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny.").

In *Daimler*, the Supreme Court rejected the view that general jurisdiction could be found "in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *Daimler*, 134 S. Ct. at 760-61. This assertion was described as "unacceptably grasping." *Id.* at 761. The Supreme Court reasoned that "[i]f

- 12 -

[the plaintiffs'] California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [the defendant]'s sales are sizable." *Id.* This reasoning applies with equal force in the context of state registration statutes. *See Brown*, 814 F.3d at 640 ("If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief.").

Therefore, the Court does not find Plaintiff's reliance upon *Pennsylvania Fire* or *Neirbo* persuasive given their outmoded approach to the application of general jurisdiction. *See, e.g., Brown*, 814 F.3d at 638-39.

### 3. Application to the Instant Matter

#### a. Defendant is Not "Essentially at Home" in New York

Defendant argues that this Court cannot exercise general jurisdiction pursuant to *Daimler* and its progeny because it is not incorporated under the laws of New York State and it does not maintain its principal place of business in this state. (Dkt. 9-2 at 13-15). Defendant submitted an affidavit of William Hartman ("Hartman"), Defendant's Executive Vice President, who averred that Defendant is not incorporated in New York and does not maintain its principal place of business in this state, and further, that Defendant "has no agents or subsidiaries located in New York" or any other business office. (Dkt. 9-3 at 1). Plaintiff does not controvert these assertions; rather, Plaintiff

focuses solely upon an alternative consent-by-registration theory of personal jurisdiction. (Dkt. 13).

There is no denying that *Daimler* affected a substantial change of law relating to the doctrine of general jurisdiction. *See, e.g., Bertolini–Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 16-cv-35, 2016 WL 7174646, at *4 (D. Vt. Dec. 7, 2016) ("The Supreme Court's decision in [*Daimler*] changed the law of general jurisdiction, making it substantially more difficult to establish that type of personal jurisdiction."); *Hood v. Ascent Med. Corp.*, 13-cv-0628 (RWS) (DF), 2016 WL 1366920, at *8 (S.D.N.Y. Mar. 3, 2016) ("In the recent cases of *Daimler* and *Goodyear*, the Supreme Court made clear that the constitutional standard for finding a corporation to be essentially at home in a foreign jurisdiction is a stringent one, and that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." (internal quotations omitted)), *report and recommendation adopted*, 13 Civ. 628 (RWS), 2016 WL 3453656 (S.D.N.Y. June 20, 2016). Although "*Goodyear* seemed to have left open the possibility that contacts of substance, deliberately undertaken and of some duration, could place a corporation 'at home' in many locations[, . . .] *Daimler*, decided in 2014, considerably altered the analytic landscape for general jurisdiction and left little room for these arguments." *Brown*, 814 F.3d at 629. "And so, when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case'" warranting the exercise of general jurisdiction. *Id.*

It is undisputed that Defendant is not a New York corporation and does not maintain its principal place of business in this state; thus, this matter must represent an "exceptional case" in order for Defendant to be found "essentially at home" in New York. *See Daimler*, 134 S. Ct. at 761 n.19. *Daimler* cited only to *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) as an example of the kind of "exceptional case" that fell outside the recognized "paradigm cases." *See Daimler*, 134 S. Ct. at 761 n.19; *see also Brown*, 814 F.3d at 628 n.8. *Perkins* is far afield from the factual context of the instant matter.

In *Perkins*, the defendant's principal place of business had temporarily shifted to Ohio—where the defendant's president maintained his home—to permit the corporation to carry on its "wartime activities." *Perkins*, 342 U.S. at 447-48. The defendant's president directed many of these wartime activities from Ohio, where he set up an office and conducted business on behalf of the defendant and maintained the defendant's office files. *Id.* at 447-48. The president also "used and maintained . . . two active bank accounts carrying substantial balances of company funds," and drew upon corporate funds to pay salaries as well as to rehabilitate the defendant's properties in the Philippines. *Id.* at 448.

Here, Plaintiff alleges that Defendant "regularly does business across" New York, and derives "substantial revenue from services rendered in" this state. (Dkt. 1-1 at ¶ 2). Plaintiff relies upon what appears to be a record from the New York State Office of the State Comptroller, which indicates that Defendant contracted with the New York Department of Transportation on seven occasions to perform various road and bridge

maintenance duties. (Dkt. 1-3 at 1, 4-5). Most of these contracts awarded hundreds of thousands of dollars for project completion, and one contract was valued at over one million dollars. (*Id.* at 4-5). These contractual relationships span time periods beginning on March, 17, 2008, and ending on June 30, 2017. (*Id.*). However, consistent with Hartman's averments, there appears to be no current contractual arrangement between Defendant and the New York Department of Transportation. (*See id.*; Dkt. 9-3 at ¶ 9). In addition, Plaintiff has not controverted Hartman's further averment that only two percent of Defendant's revenue from last year arose from any work it performed in New York State. (Dkt. 9-3 at ¶ 8). In *Daimler*, the percentage of the defendant's subsidiary's sales that arose from the subsidiary's transactions in California constituted just 2.4% of the defendant's worldwide sales volume. *Daimler*, 134 S. Ct. at 752.

Even viewing Plaintiff's allegations about Defendant's activities in New York State in the light most favorable to Plaintiff, the Court concludes that this case is simply not an "exceptional case" as contemplated by the Supreme Court in *Daimler*, and as such, because Defendant does not maintain its principal place of business in New York and is not a New York corporation, Defendant is not "essentially at home" in this state and is not subject to general jurisdiction pursuant to *Daimler*'s framework.

### b.    Consent-By-Registration Theory of General Jurisdiction

As noted above, Plaintiff asserts only one argument in support of its position that the exercise of general jurisdiction is warranted in this case. Plaintiff argues that because Defendant is a foreign corporation that is registered to do business in New York and has appointed the New York State Secretary of State as its agent for service of process,

Defendant has consented to the exercise of general jurisdiction. (Dkt. 13 at 6-17). It appears that every other federal district court in New York to squarely address whether a foreign corporation's registration with the secretary of state constitutes consent to general jurisdiction has held that this doctrine has been invalidated by the Supreme Court's decision in *Daimler. See, e.g., Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 WL 2470844, at *5 (S.D.N.Y. June 7, 2017); *Justiniano v. First Student Mgmt. LLC*, No. 16 CV 02729 (ADS) (AKT), 2017 WL 1592564, at *6 (E.D.N.Y. Apr. 26, 2017); *Minholz v. Lockheed Martin Corp.*, 227 F. Supp. 3d 249, 264-65 (N.D.N.Y. 2016); *Bonkowski v. HP Hood LLC*, No. 15 CV 4956 (RRM) (PK), 2016 WL 4536868, at *3 (E.D.N.Y. Aug. 30, 2016); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015). Although Plaintiff has offered this Court with an appendix of cases that have confirmed New York's consent-by-registration doctrine of general jurisdiction, all of the cases were decided prior to *Daimler*. (*See* Dkt. 13 at 22-24).

In its opposition papers, Plaintiff points to several more recent state trial court opinions and a federal district court decision in support of its position. (*Id.* at 14-15). Specifically, Plaintiff relies upon *Beach v. Citigroup Alternative Invs. LLC*, No. 12 CIV. 7717 (PKC), 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014), which appears to state that "[n]otwithstanding these limitations [in *Daimler*], a corporation may consent to jurisdiction in New York under CPLR § 301 by registering as a foreign corporation and designating a local agent." *Id.* at *6. This language has been criticized by a more recent decision out of the same district for relying upon outdated precedent. *Famular*, 2017 WL 2470844, at *5. The Court concurs with *Famular*'s assessment of *Beach*, and finds that

*Beach*'s cursory one-sentence statement offered little-to-no insight into how *Daimler* has affected the viability of the cases cited therein. Moreover, this language appears as mere dicta in *Beach*, which ultimately held that the plaintiff failed to make a *prima facie* showing of personal jurisdiction under CPLR 301. *Beach*, 2014 WL 904650, at *7; *see Famular*, 2017 WL 2470844, at *5. Therefore, the Court does not find Plaintiff's reliance upon *Beach* to be persuasive.

Similarly, the Court does not find the state trial court opinions cited by Plaintiff to be persuasive given their brief and incomplete analytical treatment of this issue. *See, e.g., Serov ex rel. Serova v. Kerzner Int'l Resorts, Inc.*, 52 Misc. 3d 1214(A), 2016 WL 4083725, at *2-3 (N.Y. Sup. Ct. July 26, 2016); *Aybar v. Aybar*, 706909/2015, 2016 WL 3389889, at *3 (N.Y. Sup. Ct. May 31, 2016); *Corporate Jet Support, Inc. v. Lobosco Ins. Group, L.L.C.*, No. 651976/2015, 2015 WL 5883026, at *2 (N.Y. Sup. Oct. 7, 2015); *Bailen v. Air & Liquid Sys. Corp.*, No. 190318/12, 2014 WL 3885949, at *4-5 (N.Y. Sup. Aug. 5, 2014); *see also Famular*, 2017 WL 2470844, at *5; *Bonkowski*, 2016 WL 4536868, at *3 ("[C]ases post-*Daimler* that have considered the continued viability of consent to jurisdiction through registration have done so without analysis, relying on the long-standing, pre-*Daimler* Appellate Division authority.").

Plaintiff also relies upon *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) and *Tiffany (NJ) LLC, Tiffany & Co. v. China Merchs. Bank*, 589 F. App'x 550 (2d Cir. 2014), *as amended* (Sept. 23, 2014), to support its position. (Dkt. 13 at 12-13). Again, the Court finds this reliance unpersuasive. Plaintiff notes that in both cases the Second Circuit instructed the district court that, upon remand, it "may also consider

whether [the defendant] ha[d] consented to personal jurisdiction in New York by applying for authorization to conduct business in New York and designating the New York Secretary of State as its agent for service of process." *Gucci Am., Inc*, 768 F.3d at 137 n.15; *see Tiffany (NJ) LLC, Tiffany & Co.*, 589 F. App'x at 553. However, if anything, the Second Circuit's directive indicates that the conflict between *Daimler* and the registration statute was not squarely before it in either case. *See Tiffany (NJ) LLC, Tiffany & Co.*, 589 F. App'x at 553 ("[T]he district court *had no reason to consider, or to develop the record as to* . . . whether the [defendants] consented to jurisdiction by applying for authorization to conduct business in New York and designating the New York Secretary of State as their agent for service of process." (emphasis added)); *Gucci Am., Inc*, 768 F.3d at 137 n.15 ("The district court *may also consider* whether BOC has consented to personal jurisdiction in New York by applying for authorization to conduct business in New York and designating the New York Secretary of State as its agent for service of process." (emphasis added)).

Had it been otherwise, the Second Circuit would have faced the legal issues that arose in *Brown* two years later, and then, even had it found that New York's registration statute could be interpreted to warrant the exercise of general jurisdiction post-*Daimler*, the Second Circuit would have had to square this construction with the strictures of constitutional due process. *See Brown*, 814 F.3d at 640 ("Were the Connecticut statute drafted such that it could be fairly construed as requiring foreign corporations to consent to general jurisdiction, we would be confronted with a more difficult constitutional question about the validity of such consent after *Daimler*."). Observing no such factual

development or legal analysis in *Gucci* or *Tiffany*, this Court declines to view the Second Circuit's suggestion upon remand in either case to be controlling on the instant issue, especially in light of the Second Circuit's own cautionary advisement against an "overly expansive view of general jurisdiction." *Gucci Am., Inc.*, 768 F.3d at 135.

Plaintiff further contends that *Brown* does not completely foreclose its argument, and in fact, actually bolsters its position. In *Brown*, the Second Circuit distinguished the Connecticut registration statute from Pennsylvania's registration statute. *See Brown*, 814 F.3d at 637, 640. In doing so, *Brown* indicated that Pennsylvania's registration statute "more plainly advise[d] the registrant that enrolling in the state as a foreign corporation and transacting business w[ould] vest the local courts with general jurisdiction over the corporation." *Id.* at 640. The court then stated that "[t]he registration statute in the state of New York has been definitively construed to accomplish that end. . . ." *Id.* After citing to two decisions from other circuits that have upheld the exercise of general jurisdiction arising from a foreign corporation's compliance with state registration statutes,[5] the Second Circuit suggested, in dicta, "that a carefully drawn state statute that expressly required consent to general jurisdiction as a condition on a foreign corporation's doing business in the state, at least in cases brought by state residents, might well be constitutional." *Id.* at 641.

---

[5]     Notably, both cases predate *Daimler. See Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199-1200 (8th Cir. 1990).

Here, it is clear that New York's registration statute does not provide an express requirement of consent to general jurisdiction as a condition for a foreign corporation to become authorized to transact business within the state. *See* N.Y. Bus. Corp. Law §§ 1301, 1304; *Minholz*, 227 F. Supp. 3d at 263 ("New York Business Corporations Law § 1301, like Conn. Gen. Stat. § 33–920, is silent on the matter of consent to general jurisdiction.").[6] Plaintiff argues that because the New York courts have interpreted the registration statute to achieve this end since the early twentieth century, the reasoning in *Brown* is not applicable since the Second Circuit was absent "a clear legislative statement and a definitive interpretation by the Connecticut Supreme Court" on this issue. *Id.* at 641.

Plaintiff cites to no case decided by the New York Court of Appeals in recent years that squarely addresses this issue, let alone a decision post-dating *Daimler*. Moreover, the two New York Court of Appeals cases Plaintiff relies upon predate *International Shoe* and its progeny, and interpret an earlier version of New York's

---

[6]    In its opposition papers and at oral argument, Plaintiff underscores the fact that New York's business registration statute requires the designation of the secretary of state as the foreign corporation's agent for "*any process* against it served upon him." N.Y. Bus. Corp. Law § 1304(a)(6) (emphasis added); (*see* Dkt. 13 at 10). The Court finds that this statutory language is neither sufficiently clear nor definitive to constitute an "*explicit reference to any jurisdictional implications*" of designating the secretary of state as Defendant's agent for service of process. *Brown*, 814 F.3d at 638-39; *see Display Works, LLC*, 182 F. Supp. 3d at 176 (determining that the New Jersey statute's "reference to 'in personam jurisdiction' . . . does not explain whether it refers to specific or general jurisdiction[, and] . . . therefore does not expressly inform a foreign corporation that service in the state constitutes submission to general jurisdiction."); *compare Bane*, 925 F.2d at 640 ("Pennsylvania law *explicitly* states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction." (emphasis added)).

business registration statute. *See Pohlers*, 293 N.Y. at 280; *Bagdon*, 217 N.Y. at 437; *see also Daimler*, 134 S. Ct. at 761 n.18 (stating that cases "decided in the era dominated by *Pennoyer*'s territorial thinking . . . should not attract heavy reliance today"). Indeed, Plaintiff points to no cases decided even by New York's intermediate appellate courts that have addressed the viability of the consent-by-registration theory of general jurisdiction in the wake of *Daimler*, and this Court has found none.

Furthermore, the Supreme Court's shift from the more forgiving "minimum contacts" analysis of *International Shoe* "to the more demanding 'essentially at home' test enunciated in *Goodyear* and *Daimler*[, ]suggests that federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent'—perhaps unwitting—to the exercise of general jurisdiction by state courts. . . ." *Brown*, 814 F.3d at 637. "After *Daimler*, with the Second Circuit cautioning against adopting 'an overly expansive view of general jurisdiction,' the mere fact [that a defendant is] registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation [n]or its principal place of business." *Chatwal Hotels & Resorts LLC*, 90 F. Supp. 3d at 105 (internal citation omitted) (quoting *Gucci Am., Inc.*, 768 F.3d at 135). "Because New York Business Corporations Law § 1301 is absent an explicit indication that registration subjects a registrant to general jurisdiction in New York, an exercise of general personal jurisdiction based on registration alone would be counter to the principles of due process articulated in *Daimler*." *Minholz*, 227 F. Supp. 3d at 264.

The Court acknowledges that Plaintiff's argument is not without some support. Preceding *Daimler*, the decisions issued by the courts of New York and this Circuit indicated that consent-by-registration was a viable theory upon which to assert general jurisdiction. *See STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 131 (2d Cir. 2009); *The Rockefeller Univ. v. Ligand Pharm.*, 581 F. Supp. 2d 461, 465-66 (S.D.N.Y. 2008). As Plaintiff has correctly articulated, Judge Cardozo's declarations in *Bagdon* as well as the Supreme Court's decisions in *Pennsylvania Fire* and *Neirbo* have not been explicitly overruled. However, this Court concurs with its sister courts in this Circuit that to blindly follow these pre-*International Shoe* and pre-*Daimler* decisions from the first half of the 20th century would be to ignore the monumental changes to the legal principles of general jurisdiction that have since taken place. As such, it may be time for New York's highest court to revisit its holding in *Bagdon* in light of *Daimler*.[7] Until a clearer expression of the post-*Daimler* viability of New York's consent-by-registration doctrine is settled by the New York State legislature or the New York Court of Appeals, this Court agrees with and, indeed, is bound by *Brown*'s prudence and declines to interpret New York's business registration statute as providing consent-by-registration jurisdiction "in the absence of a clear legislative statement and a definitive interpretation by the [New York Court of Appeals]." *Brown*, 814 F.3d at 640.

---

[7]    The Court notes that the Supreme Court of Delaware, in light of *Daimler* and *Goodyear*, has recently overruled its longstanding precedent that held foreign corporations to have implicitly consented to the exercise of general jurisdiction through its business registration statute. *See Genuine Parts Co. v. Cepec*, 137 A.3d 123, 148 (Del. 2016).

Lastly, at oral argument counsel for Plaintiff produced two additional post-*Daimler* federal district court cases in support of Plaintiff's position. However, *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 3129147 (E.D. Pa. July 24, 2017) applied the Third Circuit's pre-*Daimler* decision in *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991), which interpreted the Pennsylvania business registration statute. *Apotex Corp.*, 2017 WL 3129147, at *10-11. As already noted, Pennsylvania enacted a business registration statute that expressly notifies foreign corporations that the designation of Pennsylvania's secretary of state as agent for service of process constitutes consent to general jurisdiction. *See* 42 Pa. Cons. Stat. § 5301(a)(2)(i)-(ii); *see also Brown*, 814 F.3d at 627. The District of New Jersey also held in favor of exercising consent-by-registration jurisdiction in *Senju Pharm. Co., Ltd. V. Metrics*, 96 F. Supp. 3d 428 (D.N.J. 2015). Nonetheless, unlike the federal district courts in New York, which have unanimously concluded that *Daimler* and *Brown* have compromised the validity of consent-by-registration in New York, the District of New Jersey has issued diverging opinions on this point. *See Display Works, LLC*, 182 F. Supp. 3d at 175. Notably, a very recent decision from an intermediary appellate court of the State of New Jersey has rejected *Senju*'s analysis. *Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*, __ A.3d __, 2017 WL 2854420, at *7 (N.J. Super. Ct. App. Div. July 5, 2017) (rejecting the application of prior precedent that permitted the exercise of general jurisdiction "solely based on the fiction of implied consent by a foreign corporation's compliance with New Jersey's business registration statute"). These two out-of-circuit district court cases do not warrant a different result.

Therefore, because Defendant does not maintain its principal place of business in New York and is not incorporated under the laws of New York, the Court concludes that the exercise of general jurisdiction would be inappropriate as Defendant cannot be considered "essentially at home" in New York. *See Daimler*, 134 S. Ct. at 760; *Goodyear*, 564 U.S. at 919; *Chatwal Hotels & Resorts LLC*, 90 F. Supp. 3d at 105. In other words, the Court is absent authority to exercise general jurisdiction over Defendant and, as such, Defendant's motion to dismiss for lack of personal jurisdiction is granted, and Plaintiff's complaint is dismissed without prejudice.

## II.    Venue

Since Defendant's motion to dismiss has been granted and the complaint dismissed for lack of personal jurisdiction, it is unnecessary to determine the merits of Defendant's argument that the case should be dismissed for improper venue. Nonetheless, the Court may still exercise its discretion to transfer the case under 28 U.S.C. § 1404. Pursuant to 28 U.S.C. § 1404(a), "[a] civil action may be transferred to any other district where it might have been brought, for the convenience of parties and witnesses, in the interests of justice." *Mangia Media Inc. v. Univ. Pipeline, Inc.*, 846 F. Supp. 2d 319, 324 (E.D.N.Y. 2012). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993); *Maldonado v. Rogers*, 99 F. Supp. 2d 235, 240 (N.D.N.Y. 2000) ("A district court has the discretion to transfer a case in the interests of justice where personal jurisdiction is lacking, whether or not venue is proper."); *McCulley v. Anglers Cove Condo. Ass'n, Inc.*, 977 F. Supp. 177, 181 (E.D.N.Y. 1997) ("The decision

to dismiss, or in the interest of justice transfer an action, lies within the sole discretion of the district court.").

Here, Defendant argues, in the alternative, that should the Court not dismiss this action outright, the case should be transferred to a federal court in Georgia. (Dkt. 9-2 at 26-29). Plaintiff argues that the Court should not transfer the case to Georgia (Dkt. 13 at 19-21); however, Plaintiff does not make any argument as to why the case should or should not be transferred in the event this Court determines that it lacks personal jurisdiction over Defendant. Since Defendant argues for transfer in the alternative only, and Plaintiff does not seek transfer in the event the Court finds that it lacked personal jurisdiction over Defendant, the Court chooses to dismiss the complaint and declines to exercise its discretion to transfer the case to a federal court in Georgia.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 9) is granted, and Plaintiff's complaint (Dkt. 1-1) is dismissed without prejudice. To be clear, because the case is dismissed, the temporary restraining order issued by New York State Supreme Court, Monroe County, (Dkt. 1-8), is vacated. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

DATED:     August 23, 2017
           Rochester, New York